## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Pursuit Capital Management, LLC, | ) | Case No. 14-10610 (LSS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |
| Claridge Associates, LLC, Jamiscott LLC, | ) | |
| Leslie Schneider and Lillian Schneider | ) | |
| collectively as the creditors, transferees, and | ) | |
| assignees of the Estate of Pursuit Capital | ) | |
| Management, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | Adv. Proc. No. 16-50083 (LSS) |
| | ) | |
| v. | ) | |
| | ) | Re: Adv. D.I. 1, 7 |
| Anthony Schepis, Frank Canelas, Ruth Canelas, | ) | |
| Northeast Capital Management, LLC, Pursuit | ) | |
| Partners, LLC, Pursuit Investment Management, | ) | |
| LLC, Pursuit Capital Management Fund I, L.P., | ) | |
| Pursuit Capital Partners (Cayman) Ltd., Pursuit | ) | |
| Capital Master (Cayman) Ltd., Pursuit | ) | |
| Opportunity Fund I, L.P., Pursuit Opportunity | ) | |
| Fund I, Ltd., and Pursuit Opportunity Fund I | ) | |
| Master Ltd., | ) | |
| | ) | |
| Defendants. | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |

## MEMORANDUM[1]

Before the Court is the Defendants' Motion to Dismiss Complaint on Jurisdictional

Grounds ("Motion to Dismiss").[2] By this motion, the Defendants seek to dismiss or stay

---

[1] The Court is not required to state findings of fact or conclusions of law on a motion under Fed. R. Civ. P. 12, made applicable by Fed. R. Bankr. P. 7012. *See* Fed. R. Civ. P. 52(a)(3), made applicable by Fed. R. Bankr. P. 7052.

[2] Adv. D.I. 7.

the adversary proceeding on multiple grounds, some jurisdictional, some not.  For the

reasons set forth below, I will defer ruling on the Motion to Dismiss pending a ruling by the

Third Circuit on an appeal from the sale order transferring to the Plaintiffs the causes of

action that form the underlying complaint.  I will, however, permit factual discovery, which

was previously limited, to go forward.

*Procedural History*

On March 21, 2014, Pursuit Capital Management, LLC ("Debtor"), a Delaware

limited liability company, filed a voluntary petition under chapter 7 of title 11 of the United

States Bankruptcy Code ("Bankruptcy Code").  Jeoffrey L. Burtch is the chapter 7 trustee

("Trustee").  Prior to filing bankruptcy, the Debtor was the general partner of certain

investment partnerships.

On March 2, 2015, the Trustee filed his Motion for an Order Approving Agreement

to Settle, Transfer and Assign Certain Claims, Rights and Interests ("Sale Motion")[3] by

which he sought court approval of an agreement ("Agreement")[4] with Alpha Beta Capital

Partners, L.P. ("Alpha Beta"), Claridge Associates, LLC, Jamiscott LLC, Leslie Schneider,

and Lillian and Leonard Schneider (collectively, "Claridge Group").  The Agreement and

the Sale Motion address claims, litigation or interests in litigation.  First, is litigation listed

in the Debtor's schedules: (i) certain prepetition litigation the Debtor brought against Alpha

Beta and others in the State of New York ("Debtor Litigation") and (ii) the Debtor's

potential indemnification claims against Pursuit Capital Management Fund I

("Indemnification Claims").  Second, is what the Trustee labeled a "potential avoidance

---

[3] Case No. 14-10610 ("Main Case") D.I. 66.  All references to the docket in this Procedural History
are to the Main Case unless otherwise indicated.
[4] *Agreement to Settle Transfer and Assign Certain Claims, Rights and Interests* made February 27, 2015,
attached as Exhibit B to the Motion, D.I. 66 Ex. B.

action," namely, $645,571.22 in disbursements to the Debtor's members in the year prior to the filing of the bankruptcy as reflected in the Debtor's Statement of Financial Affairs ("Insider Avoidance Claim"). Third, are causes of action identified by the Claridge Group as certain additional rights and causes of action against affiliates of the Debtor, including fraudulent convey actions ("Additional Claims"). Fourth, is the Debtor's interest, if any, in certain litigation against UBS pending prepetition in the Connecticut state court system ("UBS Claim," and, collectively with the Debtor Litigation, the Indemnification Claim, the Insider Avoidance Claim and the Additional Claims, the "Assets"). The Trustee values the Assets as what they are worth under the Agreement. The Assets comprise all of the assets of the bankruptcy estate.

As the estate had no funds to pursue the Assets, the Trustee decided to administer them by selling the claims to the Claridge Group and settling the Debtor Litigation. Under the Agreement, the Claridge Group was to pay the Trustee $125,000 within twenty days after court approval of the Agreement. In exchange, the Trustee was to transfer and convey all of the right, title and interest of the Debtor and the Estate in the Assets to the Claridge Group free and clear of all liens, claims and interests under section 363 of the Bankruptcy Code.[5] Further, upon receipt of the $125,000 payment, the Debtor Litigation was deemed settled and dismissed, with prejudice, with appropriate filings to be made in the New York state court. The Agreement conveyed the Assets on an "as is where is" basis, with no representations or warranties of any kind.

---

[5] The stated predicates for the relief sought in the Sale Motion are Bankruptcy Code sections 105 and 363 as well as Federal Rules of Bankruptcy Procedure 2002, 6004 and 9019.

The Sale Motion was originally scheduled to be heard on March 26, 2015. Prior to the objection deadline, however, the Defendants filed a preliminary objection, a motion to continue the hearing, and noticed several depositions. Subsequently, the Defendants interposed further objections and I established auction procedures, a concept not encompassed in the Sale Motion as filed.[6] Five months, and many hearings later, on August 10, 2015, an evidentiary hearing was held on the Sale Motion and I took the matter under advisement.[7] On August 17, 2015, I issued a ruling from the bench granting the Sale Motion on the terms set forth in the bench ruling, including increased consideration of $180,001 plus potential recoveries from future litigation. The bench ruling included the following statement:

> Third, the [Defendants] question the right of the trustee to assign the claims as inconsistent with the Bankruptcy Code. They specifically wish to reserve all defenses to the [Plaintiffs'] ability to prosecute the claims on behalf of the estate or otherwise. It is clear that the [Defendants] must be able to raise any and all defenses they have to whatever litigation is brought, and the order entered by the Court approving the sale must so provide.[8]

I then instructed the parties to confer on and submit a form of order embodying that ruling.[9]

On August 26, 2015, the Trustee's counsel filed a Certification of Counsel in which he stated that the parties could not agree on a form of order.[10] Attached to the Certification of Counsel were three forms of order—one proposed by each of the Trustee, the Claridge

---

[6] Many of the intervening proceedings are outlined in my August 17, 2015 bench ruling on the Sale Motion. As certain issues on appeal challenge the procedures leading up to the sale hearing (see discussion *infra*), I will not comment further.

[7] Aug. 10, 2015, Hr'g Tr., D.I. 196.

[8] Aug. 17, 2015, Hr'g Tr. 14:11–19, D.I. 187. In response to a question, I further stated: "[t]he intent is to preserve any and all defenses that the [Defendants] have to raise in this court or any other court." *Id.* 15:17–19.

[9] Aug. 17, 2015, Hr'g Tr. 15:14–15.

[10] D.I. 189, at 2.

Group and the Defendants.[11]  On August 27, I signed, and on August 28, 2015, the Clerk of

the Court entered, the order approving the sale (the "Sale Order"),[12] which was the form of

order submitted by the Defendants.[13]  The Sale Order specifically provides:

> ORDERED, that notwithstanding anything to the contrary in the Agreement,
> all rights, claims and defenses that may be raised or asserted by the
> [Defendants] with respect to the UBS Litigation, the UBS Claim, the Debtor's
> Claims, the Insider Avoidance Claims and/or the Indemnification Claims,
> including, without limitation, any right to challenge standing or jurisdiction,
> are expressly reserved and preserved . . . .[14]

In signing the Sale Order, I specifically rejected language in the proposed form of order

submitted by the Claridge Group that would have qualified or limited the preservation of

any and all defenses.[15]

### The Appeal of the Sale Order

On September 8, 2015, the Defendants appealed the Sale Order to the United States

District Court for the District of Delaware (the "District Court").  The Defendants did not

seek or obtain a stay of the Sale Order.  The issues on appeal before the District Court were:

> 1.  The Supreme Court has held that the phrase "the trustee may [take a
>     specific action]" in the Bankruptcy Code means that *only* the trustee may
>     take the specific action because the trustee acts with a special fiduciary
>     role when exercising Congressionally conferred powers.  In this case, the
>     Bankruptcy Court authorized the chapter 7 trustee to assign causes of
>     action that arise under Bankruptcy Code provisions that also provide "the

---

[11] *See id.* Ex. B–D.

[12] *Order Approving Agreement to Settle, Transfer and Assign Certain Claims, Rights and Interests*, D.I. 190.

[13] *See* D.I. 189 Ex. C.

[14] Sale Order 2.

[15] The language proposed by the Claridge Group and rejected reads as follows:
> ORDERED, that all rights, claims and defenses that may be raised or asserted by the
> pursuit Parties with respect to the UBS Litigation, the UBS Claim, the Debtor's
> Clams, the Insider Avoidance Claims and/or the Indemnification Claims, including,
> without limitation, any right to challenge standing or jurisdiction, are expressly
> reserved and preserved, provided further, however, for the avoidance of doubt (if
> any), the releases, rights and/or obligations under the Agreement are not modified or
> diminished in any way by this reservation . . . .

D.I. 189 Ex. D.

trustee may" prosecute those causes of action. May a chapter 7 Trustee assign causes of action to a non-fiduciary, third-party that will prosecute them when the Bankruptcy Code -- as interpreted by the Supreme Court -- provides that *only* the trustee may bring those actions?

2.  In the cases that allowed an assignment of estate causes of action before the Supreme Court's decision (most typically in chapter 11 cases), courts required assignees to demonstrate an unjustifiable refusal to a demand to prosecute the claim to be assigned (or a determination that a demand would be futile) and to show that claim was "colorable." In this case, no evidence satisfying these requirements was submitted with respect to certain assigned claims. Was it erroneous for the bankruptcy court to approve the assignment of those claims without the required evidentiary showing?

3.  Bankruptcy courts permit auctions based on court-approved procedures. In this case, the approved procedures required that "all bids shall be made and received in one room, on an open basis, and each bidder shall be entitled to be present for all bidding, and all material terms of each bid shall be fully disclosed to all bidders[.]" Notwithstanding this mandatory requirement, the chapter 7 trustee modified the bidding requirements and demanded final sealed bids based on his ability to modify the procedures to comply with his "fiduciary duty." At the sale hearing, there was no evidence regarding how changing the procedures enabled the chapter 7 trustee to comply with his fiduciary duty. Was it legal error for the Bankruptcy Court to approve a sale based on a chapter 7 trustee's unilateral decision to modify mandatory bidding procedures when the evidence did not show that the change in procedures discharged the chapter 7 trustee's fiduciary duty to, among other things, maximize the value of the estate's assets?

4.  The Pursuit Parties objected to the sale of assets and were assured by counsel to the chapter 7 trustee in open court and by the Bankruptcy Court in a court order that they would be permitted to take a deposition of the chapter 7 trustee prior to a final hearing on the chapter 7 trustee's sale motion; however, the final hearing was scheduled without granting the Pursuit Parties this promised discovery. When the Pursuit Parties moved to adjourn the hearing, pending their ability to take the promised deposition, the Bankruptcy Court denied the request and allowed the final sale hearing to go forward. Was it error for the Bankruptcy Court to allow the final sale hearing to proceed without granting the Pursuit Parties the promised right to depose the chapter 7 trustee?

5.  Bankruptcy law allows a chapter 7 trustee to sell estate property for the highest and best price available. In this case, the chapter 7 trustee sought court approval to sell assets for $180,001; however, at the sale hearing, the

Pursuit Parties offered to pay first $205,750 for a similar sale and then offered $250,000. The bankruptcy court refused to re-open the auction to permit bidding on the assets based on these new offers and instead approved the lower offer. Was it erroneous for the Bankruptcy Court to authorize the sale of assets for a lower price when a bidder was present and ready and able to bid higher amounts for offered assets?[16]

On September 26, 2016, the District Court dismissed the Defendants' appeal of the Sale Order as statutorily moot under 11 U.S.C. § 363(m).[17] As for issues regarding the transferability of the causes of action or the Plaintiff's ability to prosecute them (the "Standing and Jurisdictional Defenses"), the District Court stated:

I read the record [below] as showing that the parties were content in the Bankruptcy Court to put off this issue for another day. I do not believe that Appellants preserved an objection to the Bankruptcy Court's handling of the issue. Thus, while Appellants have certainly preserved their rights to raise the issue as a defense to future litigation, I do not think they have preserved their rights to raise the issue on direct appeal. I do not think this is an issue that I should be deciding in the first instance. Thus, were this the only issue raised, I would simply affirm the Bankruptcy Court's Order, with the result that the issue would be decided, if necessary, in subsequent litigation.[18]

The Sale Order has been further appealed and is currently pending before the United States Court of Appeals for the Third Circuit.[19] The Defendants' Statement of the Issues before the Third Circuit are:

1.  Whether a chapter 7 trustee may sell and assign its power to prosecute estate causes of action to a non-fiduciary, third-party that will prosecute them when the Bankruptcy Code—as interpreted by the Supreme Court and Third Circuit—provides that the trustee may not sell his powers and only the trustee may bring estate causes of action?

2.  In the alternative, if a chapter 7 trustee may sell and assign its powers to prosecute estate causes of action, was it erroneous for the Bankruptcy Court to approve the assignment of claims without the required evidentiary showing that such claims are "colorable"?

---

[16] *Pursuit Parties' Designation of Record and Statement of Issues on Appeal*, D.I. 203.

[17] *In re Pursuit Capital Mgmt., LLC*, 2016 WL 5402735 (D. Del. Sept. 26, 2016).

[18] *Id.* at *3 (citation omitted).

[19] *Pursuit Parties v. Burtch*, No. 16-3953 (3d Cir.).

3. Was it legal error for the Bankruptcy Court to approve a sale based on a chapter 7 trustee's unilateral decision to modify mandatory bidding procedures when the evidence did not show that the change in procedures discharged the chapter 7 trustee's fiduciary duty to, among other things, maximize the value of the estate's assets or permit him to close the estate as expeditiously as possible?

4. Was it error for the Bankruptcy Court to allow the final sale hearing to proceed without giving the Pursuit Parties the opportunity to depose the chapter 7 trustee?

5. Did the District Court err when it determined that the appeal was moot?[20]

**The Lawsuit**

On February 25, 2016, the Plaintiffs filed the Complaint that initiated this adversary proceeding.[21] The Complaint sounds in eleven counts:  (i) Count 1—Fraudulent Transfer of $645,000 under §§ 548(a)(1)(A) & (B), 544, 550; (ii) Count 2—Fraudulent Transfer of Debtor's interest in the UBS settlement under §§ 548(a)(1)(A) & (B), 544, 550, (iii) Count 3—Fraudulent Transfer of Funds Subject to a Judgment for Money Damages under N.Y. Debt & Cred. Law § 273-a; (iv) Count 4—Breach of Fiduciary Duty (Care); (v) Count 5—Breach of Duty of Loyalty; (vi) Count 6—Breach of Contract; (vii) Count 7—Conversion; (viii) Aiding & Abetting Breaches of Fiduciary Duty; (ix) Count 9—Unjust Enrichment; (x) Count X—Accounting; (xi) Count XI—Turnover of Property of the Estate.[22]

On April 29, 2016, the Defendants filed the Motion to Dismiss the Complaint on "jurisdictional" grounds along with their Opening Brief.[23] In the Opening Brief, the

---

[20] *Pursuit Parties v. Burtch*, No. 15-801(RGA) (D. Del.), D.I. 28.

[21] Adv. D.I. 1.

[22] Counts VII–IX are against all Defendants.  Counts I–VI and X–XI are against all Defendants except Ruth Canelas.

[23] *Defs.' Mot. to Dismiss Compl. on Jurisdictional Grounds* ("Motion to Dismiss"), Adv. D.I. 7.  *Defs.' Opening Br. in Supp. of Their Mot. to Dismiss Compl. on Jurisdictional Grounds* ("Opening Brief"), Adv. D.I. 8.

Defendants make eleven arguments why some or all of the counts of the Complaint should be dismissed. These eleven arguments can be broken down into three categories, as follow:

**Arguments that apply to all counts:**

- This adversary proceeding should be stayed pending the outcome of the appellate process.

- The Court lacks personal jurisdiction over the Cayman Island defendants, and thus all counts of the complaint should be dismissed as to the Cayman defendants.

- The Case should be dismissed in favor of arbitration and/or the court should stay any otherwise non-arbitrable claims pending arbitration of arbitral claims.

- All counts must be dismissed against the Cayman Island Defendants because the law of the Cayman Islands prohibits derivative shareholder suits.

**Arguments that only apply to Counts I–III:**

- The Plaintiffs have not complied with the Sale Order's three-day-notice requirement and thus Counts I–III of the Complaint should be dismissed as a sanction for violating the sale order.

**Arguments that only apply to one or more of Counts IV–XI:**

- The Plaintiffs have not complied with the Sale Order's three-day-notice requirement with respect to Counts IV–XI and thus these counts should be dismissed for lack of standing.

- Counts IV–IX are non-core and thus the Court may not enter a final judgment on these counts.

- Counts IV, V, VIII must be dismissed for failure to state a claim for breach of fiduciary duty.

- Counts IV and V must be dismissed because under applicable state law the plaintiffs do not have standing to assert claims derivatively on behalf of the Debtor and/or relevant exculpation provisions.

- Count VIII must be dismissed because Plaintiffs have not adequately stated a claim for aiding and abetting a breach of fiduciary duty.

- Count IX must be dismissed because a claim for unjust enrichment may not stand in the face of an express contract.

Notwithstanding my bench ruling and the reservation and preservation of all defenses in the Sale Order, the Defendants did not brief the Standing and Jurisdictional Defenses in the Opening Brief. Rather, the Defendants' three-day-notice and personal jurisdiction arguments comprise the totality of their "standing" or "subject matter jurisdiction" arguments based on the Sale Order.[24] Nowhere except in a general heading in the Opening Brief do the Defendants even mention the Plaintiffs' ability to prosecute the Complaint.

At the November 30, 2016 oral argument on the Motion to Dismiss, the Defendants sought to argue the Standing and Jurisdictional Defenses notwithstanding their recognition that they had not briefed them.[25] I did not entertain that argument, but permitted supplemental briefing on the Standing and Jurisdictional Defenses as well as whether the Defendants' failure to brief those defenses in the Opening Brief constituted a waiver or otherwise precluded the Defendants from raising them. Supplemental briefing was completed on February 7, 2017,[26] and I heard supplemental argument on March 27, 2017. After reading the supplemental briefing, and prior to the supplemental argument, I asked the parties to be prepared to address the doctrine of divestiture given the Third Circuit appeal.

---

[24] Being generous, these arguments span two pages of the Opening Brief.
[25] Nov. 30, 2016, Hr'g Tr. 36:9–38:21, 114:15–116:19, Adv. D.I. 51.
[26] Adv. D.I. 58–59, 66–67.

***Legal Analysis***

A court has the independent obligation to ensure that it has subject matter jurisdiction over the matters before it.[27] Defendants' Motion to Dismiss raises various arguments that it contends are jurisdictional in nature. Some are; some are not. But, before addressing these more traditional jurisdiction arguments I must determine the effect, if any, of the appeal of the Sale Order on my ability to rule on the Motion to Dismiss.

(i)    ***The Divestment Doctrine***

Filing a notice of appeal is an event of jurisdictional significance, conferring jurisdiction on the appellate court, and divesting the court of origin of its control over "those aspects of the case involved in the appeal."[28] The divestment doctrine is a judge-made rule, the purpose of which is to "prevent confusion and inefficiency if two courts were to adjudicate the same issues simultaneously."[29] As long as the matters in front of the lower court would not alter the appealed order, the trial court is not divested of jurisdiction.[30] Indeed, a lower court may enforce or implement its order unless the appellant has obtained an order staying the underlying action pending appeal.[31] Thus, courts "are not divested of jurisdiction to decide issues and proceedings different from and collateral to those involved

---

[27] Mar. 27, 2017, Hr'g Tr., D.I. 241, Adv. D.I. 89.
[28] *Venen v. Sweet*, 758 F.2d 117, 120 (3d Cir. 1985) (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)); *see also Thomas v. Northeastern Univ.*, 470 Fed. App'x 70, 71 (3d Cir. 2012) (district court was divested of jurisdiction by appeal of order dismissing complaint and could not consider motions to amend complaint and for default judgment on complaint).
[29] *In re Licking River Mining, LLC*, 535 B.R. 731, 737 (Bankr. E.D. Ky. 2015).
[30] *In re Wash. Mut., Inc.*, 461 B.R. 200, 220 (Bankr. D. Del. 2011), *vacated in unrelated part*, 2012 WL 1563880 (Bankr. D. Del. Feb 24, 2012).
[31] *In re Bd. Of Dirs. Of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 583 (Bankr. S.D.N.Y. 2001); *see also Trone v. Roberts Farms, Inc. (In re Roberts Farms, Inc.)*, 652 F.2d 793, 798 (9th Cir. 1981) (holding that in the absence of a stay pending appeal of a confirmed plan the court was not divested of jurisdiction to implement the plan).

in the appeal."[32] "This is true because in implementing an appealed order, the court does not disrupt the appellate process so long as its decision remains intact for the appellate court to review."[33]

Because the trial court is only divested over the aspects of a case involved in the appeal and not all matters that may arise in a case, the trial court's task is to determine whether the matters before it implicate the appeal or are collateral to those issues involved in it. That task is more or less difficult depending on the posture of the case.[34]  A few examples are helpful.

The court in *In re Board of Directors of Hopewell*, seemed to have little difficulty in determining that it was not divested of its ability to rule on a Bankruptcy Rule 2004 motion notwithstanding that a previous order sustaining a § 304 petition was on appeal.[35]  The court held that the requested discovery issues were collateral to and different from the issues on appeal regarding the propriety of recognizing the § 304 petition in the first instance.  The court determined the only overlap between the discovery motion and the appeal of the grant of the § 304 petition was that, should the district court reverse the bankruptcy court's order

---

[32] *Hopewell*, 258 B.R. at 583.

[33] *Dicola v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. (In re Prudential Lines, Inc.)*, 170 B.R. 222, 243 (S.D.N.Y. 1994) (acts "undertaken to enforce the judgment and acts which expand upon or alter it; the former being permissible and the later prohibited.").

[34] *Whispering Pines Estates, Inc. v. Flash Island, Inc. (In re Whispering Pines Estates, Inc.)*, 369 B.R. 752, 758 (B.A.P. 1st Cir. 2007) ("Determining what is related and unrelated to the pending appeal in a bankruptcy case, however, is not always a simple task.").  It has been observed that in the chapter 11 context the distinction between enforcement of an order and alteration of it "is most germane" because such cases involve the court's "issuance of innumerable orders involving a myriad of issues, one or more of which may be on appeal at any given moment.  Permitting a court to enforce its orders, while prohibiting it from expanding upon them, allows the least disruption of the court's administration of a bankruptcy plan." *In re Prudential Lines, Inc.*, 170 B.R. at 244.  This adversary proceeding is not a chapter 11 case, nor a chapter 7 case with significant remaining assets to administer apart from this lawsuit.  Rather, in considering the doctrine of divestment and specific bankruptcy-related concerns, this case is closer to two-party litigation than a chapter 11 case.

[35] *See In re Bd. Of Dirs. Of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580 (Bankr. S.D.N.Y. 2001).

and thus dismiss the entire case, it was likely the collateral discovery proceedings would also be dismissed.[36]  Further, the court observed that because the appellants did not obtain a stay of the order granting the § 304 petition, the court had a continuing duty to administer the case.[37]

Similarly, the court in *In re Licking River Mining, LLC* held that an appeal of an order determining that a lenders' prepetition collateral was subject to a professional fee carve-out did not divest the court of the power to implement the order by further determining allowance and payment of fee/expense amounts from that collateral.  In so finding, the court rejected the lenders' argument that the court was doing more than enforcing its previous order in that it was granting subsequent relief predicated on the ruling being appealed.  The court observed that the previous order did not determine the amount of allowed fees and reasoned that "decisions regarding allowance and payment of fees will not jeopardize, confuse or otherwise compromise the Lenders' appeal."[38]

On the other hand, the court in *In re Wonder Corp. of America*, found it was divested of jurisdiction to consider certain aspects of a debtor's motion for sanctions against a creditor and its counsel because of the creditor's appeal of a previous ruling regarding its own attorneys fees.[39]  In *Wonder Corp.*, an over secured creditor sought attorneys fees under 11 U.S.C. § 506(b).[40]  After a hearing, the court awarded only one-third of the fees requested because of the unnecessary, unproductive and obstructionist nature of the secured creditor's actions.[41]  The debtor subsequently filed a motion for sanctions (seeking attorneys fees)

---

[36] *Id.* at 583.
[37] *Id.*
[38] 535 B.R. at 740.
[39] 81 B.R. 221 (Bankr. D. Conn. 1988).
[40] *Id.* at 221–22.
[41] *Id.* at 222.

against the creditor, delineating nine categories of sanctionable conduct. To determine whether it had jurisdiction to rule on the motion for sanctions, the court examined each of the nine categories independently compared to the creditor's Statement of Issues on Appeal. Ultimately, the court held that certain of the nine categories were based on the same conduct at issue in the appeal and thus the court was divested of jurisdiction to consider sanctions on those grounds. But, the court held other of the nine categories of sanctions did not implicate the issues before the appellate court and there was no bar to their resolution.[42]

Finally, the court in *In re Wallace's Bookstores, Inc.*, cited case law on the divestment doctrine in ruling that it could not consider a plaintiff's motion to dismiss a single count of a complaint when it had previously denied a defense motion to dismiss the entire complaint on the basis of sovereign immunity.[43] The previous ruling denying defendant's motion to dismiss had been appealed and was then pending before the United States Supreme Court. While it does not appear that the plaintiff's motion to dismiss before the trial court in any way touched on the issue of sovereign immunity, the court nonetheless found itself "powerless to dismiss" the count.[44] The court found that the appeal related to each and every count of the complaint as the defense of sovereign immunity was asserted to the totality of the complaint.[45] While the court discussed the doctrine of divestment in its ruling, it also cited to case law questioning the authority of a district court to dismiss a case during the pendency of an appeal pursuant to a stipulation of settlement among the parties.[46] It is not clear which line of jurisdictional case law the court relied on more heavily.

---

[42] *Id.* at 224–26.
[43] *Katz v. New River Cmty. Coll. (In re Wallace's Bookstores, Inc.)*, 330 B.R. 193, 194–95 (Bankr. E.D. Ky. 2005).
[44] *Id.* at 195.
[45] *Id.*
[46] *Id.*

*(ii)*    ***The Parties' Positions***

Each of the parties touched upon the divestment question in their briefing. In their answering brief,[47] the Plaintiffs, without analysis, state in a footnote that the Court is not divested of jurisdiction.[48] The Defendants, in their reply brief,[49] counter (with some, but not much analysis) that the Court is divested of jurisdiction because "the same issues are involved in the Appeal and the Motion to Dismiss." In particular, Defendants state that the following issue is both before this Court and the appellate court (then, the District Court): "Defendants contend that Plaintiffs lack standing because as a matter of policy the [sic] cannot own estate claims and chapter 7 trustee duties."[50]

Because the briefing on the divestment issue was less than fulsome, I asked the parties to be prepared to address the issue during supplemental argument. As with most things in this case, not only do the parties disagree on the legal conclusion, they do not even agree on what matters are before the Third Circuit on appeal. The disagreement focuses on the scope of the first two issues on appeal. Again, those issues are:

1.  Whether a chapter 7 trustee may sell and assign its power to prosecute estate causes of action to a non-fiduciary, third-party that will prosecute them when the Bankruptcy Code—as interpreted by the Supreme Court and Third Circuit—provides that the trustee may not sell his powers and only the trustee may bring estate causes of action?

2.  In the alternative, if a chapter 7 trustee may sell and assign its powers to prosecute estate causes of action, was it erroneous for the Bankruptcy Court to approve the assignment of claims without the required evidentiary showing that such claims are "colorable"?

---

[47] *Pls.' Answering Br. in Opp'n to Defs.' Mot. to Dismiss Coml. on Jurisdictional Grounds* ("Answering Brief"), Adv. D.I. 26.

[48] Answering Brief 9 n.2. To be fair, as the Defendants did not brief the Standing and Jurisdictional Defenses in their Opening Brief, the Plaintiffs did not focus on the divestment issue at that time. Neither did I.

[49] *Defs.' Reply Br. in Supp. of their Mot. to Dismiss the Compl. on Jurisdictional Grounds* ("Reply"), Adv. D.I. 28.

[50] Reply 3.

At argument, I asked each of the parties whether these two issues touch upon each of the counts of the Complaint or just Counts I–III, which state claims for avoidance actions and hence implicate estate causes of action or powers provided to a trustee under the Bankruptcy Code.

Plaintiffs' counsel was unprepared to address that issue at the hearing, stating "I do not think that that is completely clear, now that you've asked that question of [Defendants'] counsel, and you're asking it of me, in terms of what [Defendants] are arguing before the Third Circuit. I'm not certain what they're arguing."[51] In fairness, counsel further stated that the issues before the Third Circuit did implicate Counts I–III, and that she was hearing a more expansive view from Defendants during supplemental argument. In a subsequent permitted letter filing, Plaintiffs definitively took the position that these two issues relate only to Counts I–III referencing pages of the Defendants' briefs before the Third Circuit that Plaintiffs contend "defin[e] and argu[e] issues only in the context of 'avoidance powers.'"[52] In particular, Plaintiffs state that this Court retains jurisdiction over all issues that do not turn "on whether the Bankruptcy Code authorizes only trustees to prosecute fraudulent conveyance claims in Chapter 7 cases."[53] Additionally, Plaintiffs argue that if the Standing and Jurisdictional Defenses have been waived because the Defendants failed to raise or brief them in their Opening Brief, then this Court is not divested of jurisdiction.[54] On the other hand, Plaintiffs state that if the Standing and Jurisdictional Defenses have not been waived, this Court is divested of jurisdiction over Counts I–III.[55]

---

[51] Mar. 27, 2017, Hr'g Tr. 52:10–14.
[52] Adv. D.I. 91, at 3.
[53] Id.
[54] See id.
[55] See id.

Defendants take a broader view of the issues they have placed before the Third

Circuit. While they agree with the Plaintiffs that the issues on appeal relate to Counts I–III,

they also now assert that each of the causes of action in the Complaint relate to a cause of

action that only a trustee may bring.[56] They argue that not only do avoidance actions fall

within this category, but each state law cause of action does as well. Defendants take the

position that a trustee prosecutes § 541 causes of action—such as breach of fiduciary duty

claims and breach of contract claims—under § 544 of the Bankruptcy Code.[57] Defendants

further contend that the trustee's powers under sections 323[58] and 704[59] of the Bankruptcy

Code cannot be sold.[60] And, finally, Defendants take the position that it was their intent to

"encompass within avoidance powers all of the causes of action set forth [in the

Complaint]. . . . [T]hat statement of issue[s] was intended to encompass the ability of the

trustee to convey all of his prosecutorial powers."[61]

Notwithstanding their expansive view of the matters before the Third Circuit, and

presumably this Court, the Defendants also took the position in supplemental argument that

the divestment doctrine does not bar me from ruling on any matter in the Motion to

Dismiss. They argue that because the District Court did not rule on the Standing and

---

[56] *See, e.g.*, Mar. 27, 2017, Hr'g Tr. 16:8–18:16, 26:11–17.
[57] Mar. 27, 2017, Hr'g Tr. 13:21–14:20. *But see* the discussion of the distinction between § 541 causes of action, which are pre-bankruptcy debtor causes of action that come into the estate under § 541 of the Bankruptcy Code upon the filing of a petition, and estate causes of action created by the Bankruptcy Code. *Miller v. Kirkland & Ellis LLP (In re IH 1, Inc.)*, 2016 WL 6394296, at *13 (Bankr. D. Del. Sept. 28, 2016) (Findings of Fact and Conclusions of Law) (citing, *e.g.*, *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340 (3d Cir. 2001); *PAH Litig. Tr. v. Water St. Healthcare Partners L.P. (In re Physiotherapy Holdings, Inc.)*, 2016 WL 3611831(Bankr. D. Del. June 20, 2016); *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3d Cir. 1989)).
[58] Section 323 of the Bankruptcy Code provides that: "The trustee in a case under this title has capacity to sue and be sued."
[59] Section 704 contains a list of duties a trustee is to perform.
[60] Mar. 27, 2017, Hr'g Tr. 16:18–24.
[61] *Id.* 17:17–24.

Jurisdictional Defenses in the first instance that Judge Andrews did not view this Court of having been divested of jurisdiction.[62] This new-found position is inconsistent with the divestment doctrine itself, and with the position Defendants take in their Reply. The following colloquy also reflects the Defendants' view:

> The Court: Well, it's interesting, the argument you're making that, by ruling on the motion to dismiss, I would be enforcing the order, not modifying it, and so I'm not divested. But at the same time, the posture that the defendants have put this motion in, vis-à-vis their appeal, which they have every right to take, means that I could be deciding the same issue that the Third Circuit is deciding. Am I supposed to step on that?
>
> Mr. Martin: No, Your Honor, I don't think so. I think that, if you were to rule and you were to dismiss the case, obviously, we could evaluate whether we even needed to proceed with the appeal. If Your Honor were to rule and not dismiss the case and deny my argument, it's likely we could seek certification and combine Your Honor's subsequent ruling with the initial ruling, and try to get the Third Circuit to consider all of the issues on a unified basis.[63]

*(iii)    Analysis*

The only jurisdictional argument relative to the appeal discussed by the parties, albeit in summary fashion, was the divestment doctrine. The approach taken by both parties is an indiscriminate, all or nothing approach—either the court is divested of jurisdiction or not. Nevertheless, it is clear that the Standing and Jurisdictional Defenses are the only issues on which the parties rely for the divestment argument. No party contends that the appeal is implicated by the other bases for the Motion to Dismiss (e.g., personal jurisdiction, arbitrability, failure to state a claim). As to these defenses, it is clear the Court is not

---

[62] *Id.* 19:20–21:13. Of course, Judge Andrews had no reason to express a view on divestment in his opinion, nor did he know at that time that Defendants would further appeal the Sale Order. At the hearing, Defendants also informed me that they notified the Third Circuit of the March 27, 2017 hearing and moved to stay briefing before the Third Circuit. That motion was denied. *Pursuit Parties v. Burtch*, No. 16-3953 (3d Cir. Feb. 6, 2017).

[63] Mar. 27, 2017, Hr'g Tr. 22:21–23:11.

divested of jurisdiction as they raise issues that are different from and collateral to those involved in the appeal and were not addressed in the Sale Order.

With respect to the Standing and Jurisdictional Defenses, the answer would, at first blush, appear to be the same.  A high level, semi-syllogistic approach to the divestment rule is as follows.  The Sale Order approved the transfer of the causes of action delineated therein to the Plaintiffs.  Relying on the Sale Order, the Plaintiffs filed the Complaint and the Defendants filed the Motion to Dismiss.  The bases that underlie the Motion to Dismiss are matters on which I did not rule in the Sale Order so any ruling on the Motion to Dismiss will not alter or enlarge the Sale Order.  The Standing and Jurisdictional Defenses were specifically preserved in the Sale Order, and so ruling on those defenses could be viewed as enforcing the Sale Order.  Therefore, I can rule on the Standing and Jurisdictional Defenses.

But, the unique posture of this case compels a second look.  Here, because the Trustee determined to sell and the Plaintiffs determined to buy the Assets "as is where is," the Sale Order preserved the Standing and Jurisdictional Defenses to any complaint filed on the transferred causes of action, and the Defendants appealed the Sale Order, the Defendants now have vehicles by which to place the same issues in front of two courts simultaneously for first-time rulings.  Accordingly, even though ruling on the Standing and Jurisdictional Defenses will not modify or enlarge the appealed order, those defenses are not different from and collateral to issues raised in the appeal; the issues are identical.  The divestment rule, as heretofore articulated, does not appear to contemplate this situation which perhaps raises the question of whether the issues presented on appeal are properly before the appellate court.  While not stated in this fashion, the District Court's ruling is instructive.  The District Court recognized that the Standing and Jurisdictional Defenses

had not been ruled on, believed that both Plaintiffs and Defendants were content to have the Sale Order entered without a determination of the preserved defenses and concluded that Defendants did not preserve their right to appeal these issues directly. I decline to speculate whether the Third Circuit will agree with that conclusion.

On balance, I find it prudent not to rule on the Standing and Jurisdictional Defenses prior to a ruling by the Third Circuit. Although the Standing and Jurisdictional Defenses do not appear to implicate the traditional understanding of divestment, the Defendants have placed the "same issue simultaneously" before two courts,[64] already resulting in the substantial confusion and inefficiency this prudential rule seeks to avoid. Further, I will not entertain Defendants' proposal that I rule on the Standing and Jurisdictional Defenses because they have been waiting some time for a decision from some court. This is a situation of the Defendants' own making. The Defendants have placed themselves in the untenable position of seeking relief from this Court—i.e., dismissal of the adversary proceeding—while simultaneously arguing, at least in the first instance, that I cannot rule on that relief because the Court is divested of jurisdiction. The new-found position that I rule and provide the Defendants with optionality on whether to proceed with their appeal depending on the outcome only underscores the need to await the Third Circuit's decision.[65]

Having determined that I will not rule on the Standing and Jurisdictional Defenses prior to a decision from the Third Circuit, the question remains whether this conclusion means that I must or should withhold ruling on all aspects of the Motion to Dismiss. The

---

[64] *See, e.g., In re Licking River Mining, LLC,* 535 B.R. 731, 737 (Bankr. E.D. Ky. 2015).
[65] Neither will I take the Plaintiffs up on their proposal that I determine whether the Standing and Jurisdictional Defenses have been waived pursuant to Rule 12(g) in determining whether the divestment doctrine applies here. The outcome-determinative nature of this argument leads me to doubt that it is aligned with divestment jurisprudence; initial divestment should not result from a subsequent determination.

parties agree that Counts I–III are implicated by the appeal, but as stated above, they do not

agree as to whether Counts IV–XI also fall within that category.  I highly doubt that the

appeal and the supplemental briefing on the Standing and Jurisdictional Defenses filed in

this matter directly implicate Counts IV–XI.  I do not read the supplemental briefing nor the

Statement of Issues on appeal as challenging the Trustee's ability to transfer the state law

causes of action set forth in Counts IV–XI of the Complaint.[66]  Nonetheless, I will not rule

at this time on the Standing and Jurisdictional Defenses as they may relate to Counts IV–XI

because it became evident during the course of supplemental argument that any discussion

on Counts IV–XI might distinguish, or at least touch upon, the Standing and Jurisdictional

Defenses analysis for Counts I–III.

Further, I will not rule on the remaining defenses at this time.  While not divested of

jurisdiction to rule on these matters, it is within the Court's discretion to defer ruling until

the Third Circuit has addressed the appeal.  The Standing and Jurisdictional Defenses are

central to the question of who may pursue Counts I–III, and possibly Counts IV–XI if the

Third Circuit agrees with the Defendants' position that this issue cuts across the entire

Complaint.  Moreover, as part of their supplemental briefing the Defendants raised an issue

not previously identified (nor sanctioned by the Court for supplemental briefing), namely

---

[66] In their supplemental brief, the Defendants stated their positions as follows:
  A.  The Causes of Action Asserted in **Counts I–III** were not Property of the Estate
      and Could not be Sold to the Plaintiffs, requiring their dismissal.
  B.  The Trustee lacked Authority to Assign **Causes of Action Arising Under the
      Bankruptcy Code** to a Non-Fiduciary, Third Party, Because "Only" the Trustee
      may Bring Those Actions.
*Suppl. Br. in Supp. of Defs.' Mot. to Dismiss Compl. on Jurisdictional Grounds* ("Defendants' Supplemental
Brief") (emphasis added), Adv. D.I. 59, at 2.  These statements, as well as the briefing overall,
suggest that these positions relate to avoidance actions and not § 541 causes of action.  *See supra* note
57.

champerty.[67] And, in yet another unsanctioned filing, the Defendants seek to dismiss the

case based on the first-filed doctrine[68] (itself subject to a motion to strike[69]). Prior to delving

into the morass contained in Defendants' serial briefing, some court—either this one or the

Third Circuit—should decide whether the Plaintiffs can prosecute the Complaint.

Important to the determination to defer ruling on the Motion to Dismiss is that it will

not interfere with the progress of this bankruptcy case nor, because I am lifting the

moratorium on discovery, this adversary proceeding. As previously referenced, this is not a

chapter 11 case and the Trustee has no other assets to administer. Thus, this bankruptcy

case in wholly distinguishable from cases, such as *In re Washington Mutual, Inc.*, in which the

court properly refused to defer ruling on confirmation of a plan of reorganization even

though it might render moot an appeal from a prior order which had not been stayed.[70] As

noted there, to defer ruling could possibly stall the bankruptcy case indefinitely.[71]

My decision to defer ruling on the Motion to Dismiss, however, should not further

disadvantage the Plaintiffs nor give the Defendants the benefit of staying the adversary

proceeding without having sought or obtained a stay pending appeal. On May 2, 2016, the

Plaintiffs submitted a proposed discovery schedule for the adversary proceeding.[72] At the

---

[67] Defendants' Supplemental Brief 13–15.
[68] Adv. D.I. 55. The Defendants also filed a 976-page Appendix in support. Adv. D.I. 57.
[69] Adv. D.I. 63.
[70] 461 B.R. 200, 217–20 (Bankr. D. Del. 2011).
[71] The instant bankruptcy case does not implicate the concern noted in *Whispering Pines Estates, Inc. v. Flash Island, Inc. (In re Whispering Pines Estates, Inc.)*:
> As courts have noted, however, a bankruptcy case typically raises a myriad of issues, many totally unrelated and unconnected with the issues involved in any given appeal. The application of a broad rule that a bankruptcy court may not consider any request filed while an appeal is pending has the potential to severely hamper a bankruptcy court's ability to administer its cases in a timely manner.
369 B.R. 752, 758 (B.A.P. 1st Cir. 2007) (citations omitted).
[72] *See Certification of Counsel Regarding Scheduling and Discovery Pursuant to Del. Bankr. L.R. 7016-1(d)* 2, Adv. D.I. 10.

May 5, 2016 scheduling conference the Defendants took the position that all discovery should be stayed pending resolution of the then-recently-filed Motion to Dismiss.[73] The Plaintiffs opposed staying all discovery although they agreed that expert discovery and depositions could be delayed.[74] At that time, I permitted document discovery solely as it related to the Debtors' books and records. On May 23, 2016 (after the customary dueling forms of order), I entered an Initial Scheduling Order granting limited document discovery.[75] The Defendants have repeatedly thrown up roadblocks to even the limited discovery I permitted. Accordingly, my previous ruling limiting discovery is vacated. Factual discovery on all issues is now permitted.

*Conclusion*

For the reasons set forth herein, I will defer ruling on the Motion to Dismiss. Plaintiffs are directed to submit a form of scheduling order permitting full fact discovery to commence.

Dated: June 9, 2017

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

---

[73] *Id.*; May 5, 2016, Hr'g Tr. 3:20-4:3, D.I. 231.
[74] May 5, 2016, Hr'g Tr. 5:10–12.
[75] Adv. D.I. 24.